UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF GEORGIA
ATLANTA DIVISION

| | | |
|---|---|---|
| JACQUELINE LEWIS, | ) | |
| | ) | |
| Plaintiff, | ) | CIVIL ACTION |
| | ) | FILE NO. _____ |
| v. | ) | |
| | ) | **JURY TRIAL REQUESTED** |
| CITY OF UNION CITY, GA, and | ) | |
| CHIEF OF POLICE CHARLES | ) | |
| ODOM, in his official and individual | ) | |
| capacities, | ) | |
| | ) | |
| Defendants. | ) | |

## **COMPLAINT**

1.

Plaintiff Jacqueline Lewis ("Plaintiff " or "Lewis") files the following

Complaint against Defendant City of Union City, GA ("Union City") and Chief of

Police Charles Odom in his official and individual capacities  ("Odom")

(collectively as "Defendants") for race, gender, and disability discrimination.

## **Introduction**

2.

Defendant terminated Ms. Lewis due to her race, gender and disability in

violation of Title VII of the Civil Rights Act of 1964, as amended ("Title VII"), 42

U.S.C. § 2000e *et seq*., 42 U.S.C. ¶ 1981 through 42 U.S.C. § 1983, the Equal

Protection Clause of the United States Constitution through 42 U.S.C. § 1983, and

the Americans with Disabilities Act, as amended by the ADA Amendments Act of

2008 ("ADAAA"), 42 U.S.C. § 12101 *et seq.* Plaintiff is seeking injunctive relief,

compensatory and punitive damages, and attorneys' fees and costs against

Defendant.

3.

Plaintiff Lewis dedicated nearly 10 years of her life to the Union City Police

Department eventually achieving the rank of detective. Even after suffering a heart

attack and discovering that she had a heart condition and Graves disease, Ms.

Lewis continued to meet and excel at her job as a detective. In June 2010, Union

City implemented a new policy whereby all police officer, including detectives,

would be required to get shocked by Tasers. Because of her condition, Ms. Lewis

requested an accommodation to not be shocked by the Taser until she could get

clearance from her physician. Union City refused to grant her accommodation and

instead forced Ms. Lewis to take leave while she attempted to get clearance from

her physician to be shocked by the Taser. However, before Ms. Lewis could return

from her leave, Union City summarily terminated her employment under the guise

of taking unapproved leave.

## Jurisdiction and Venue

4.

Plaintiff's claims present federal questions over which the Court has jurisdiction pursuant to 28 U.S.C. § 1331, 42 U.S.C. § 12101 *et seq*., and 42 U.S.C. §2000e-5(f)(3).

5.

This Court is an appropriate venue for all of Plaintiffs' claims under 28 U.S.C. § 1391(b) and 42 U.S.C. §2000e-5(f)(3), because all of the parties reside within the Northern District of Georgia, and all or a substantial majority of the events giving rise to Plaintiffs claims occurred in this judicial district.

## The Parties

6.

Ms. Lewis is a citizen of the United States and a resident of the State of Georgia.  She is a former employee of the Union City Police Department.

7.

Ms. Lewis is and, at all times relevant hereto, was an individual with a disability as that term is defined under 42 U.S.C. § 12102(1).

8.

Ms. Lewis has an actual physical impairment causing substantial limitation in one or more major life activities.

9.

Ms. Lewis has a record of impairment during her employment with the Union City Police Department.

10.

Defendants also regarded Ms. Lewis as having an impairment.

11.

Union City has more than fifteen (15) employees and is an employer with the meaning of Title VII and the ADAAA.

12.

Union City is a municipal corporation doing business in the State of Georgia and is, therefore, subject to personal jurisdiction in Georgia.

13.

Charles Odom is the Chief of Police of the Union City Police Department and is therefore subject to personal jurisdiction in Georgia.

14.

Defendant Union City may be served with process by serving Mayor Ralph Moore at the office of the Mayer, 5047 Union Street, Union City, Georgia 30291.

15.

Defendant Odom may be personally served at his place of business, Union City Police Department, 5060 Union Street, Union City, Georgia 30291.

**Administrative Proceedings**

16.

Plaintiff filed a Charge of Discrimination with the Equal Employment Opportunity Commission on August 30, 2010 – within 180 days of the occurrence of the discrimination and Defendants' termination of her employment.

17.

The EEOC then issued a determination finding that "based upon the evidence and the record as a whole, there is reasonable cause to conclude that the Charging Party was subjected to disparate treatment and terminated because of her disability, race (African American), and gender (Female), in violation of the ADA and Title VII," on August 31, 2011.

18.

Plaintiff received her Notice Right to Sue and instituted this civil action in the appropriate federal district court within 90 days of the receipt of the Notice of Right to Sue.

**Statement of Facts**

19.

Ms.  Lewis began her employment with the Union City Police Department ("Police Department") in November 2001.

20.

In 2008, the Police Department promoted Ms. Lewis to Detective.

21.

During her employment, nine African American officers met with Police Department officials to complain about disparate treatment and race discrimination at the Police Department.

22.

Since that meeting, eight of those nine African American officers have been terminated.

23.

As a detective, Ms. Lewis did not answer calls or make forcible arrests like regular patrol officers.

24.

In January 2009, Ms. Lewis suffered a heart attack.

25.

From the time of her heart attack through her termination, Ms. Lewis received follow up treatment for her heart condition and for Graves disease.

26.

In June of 2010, the Chief Odom ordered Ms. Lewis and all POST certified officers of the Police Department to become certified to carry a Taser.

27.

As a part of the certification process, although not required to become certified, Chief Odom insisted that all officers be subjected to an electric shock by a Taser.

28.

Chief Odom made being shocked by a Taser a condition of Ms. Lewis's continued employment.

29.

The Taser company does not require officers to be shocked in order to be certified as user or instructor.

30.

At the time that Taser certification was being conducted, not all Union City police officers were required to be shocked by the Taser.

31.

Rather, one Caucasian male officer and one Latino officer were not required to be shocked with a Taser until receiving the appropriate medical clearance.

32.

On June 30, Ms. Lewis requested the same reasonable accommodation that the Caucasian male and the Latino male received for their disabilities.

33.

On June 15, 2010 Ms. Lewis's physician, Erin Harris, sent Chief Odom a letter recommending that the Taser gun not be used on or near Ms. Lewis because of Ms. Lewis's medical conditions.

34.

Union City did not accommodate Ms. Lewis's request to forgo being shocked by the Taser and did not engage in the interactive process to determine a reasonable accommodation for Ms. Lewis.

35.

On June 17, 2010, Defendants ordered Ms. Lewis to take leave without pay based on her medical condition.

36.

Even though Ms. Lewis worked as a detective and would not be required to use a Taser as part of the essential functions of her job, Defendants would not allow Ms. Lewis to return to work until she was shocked by the Taser.

37.

The Caucasian male officer and the Latino male officer were not forced to take medical leave while their reasonable accommodations were negotiated and, remained actively employed throughout the process.

38.

On July 1, 2010, Assistant Chief of Police Lee Brown, acting on behalf of Union City, wrote Ms. Lewis a letter stating "based on your current job description, your doctor's letter essentially makes it impossible for you to return or

be at work. Therefore until her doctor releases you for duty, your request is denied."

39.

Ms. Lewis's physician was on vacation, but she was able to make an appointment to meet her doctor on Wednesday July 7, 2010.

40.

Ms. Lewis then sent Chief Brown a letter requesting Brown's phone number on Friday, July 2, 2010, so that she could have her doctor call Brown immediately when she met with her doctor.

41.

Then, on Tuesday, July 6, 2010, Ms. Lewis sent Brown a follow-up letter requesting his phone number so that she could have the doctor call him immediately when she met with the doctor the following day.

42.

The following day, on July 8, 2010, Union City accused Ms. Lewis of taking unapproved leave and terminated her employment.

**COUNT I**
**Race Discrimination in Violation of**
**Title VII of The Civil Rights Act of 1964, as Amended**
**(Against Defendant Union City)**

43.

Plaintiff incorporates by reference the preceding Paragraphs as if fully restated herein.

44.

Ms. Lewis is African American.

45.

Ms. Lewis is qualified for the position from which she was terminated.

46.

Defendant discriminated against Ms. Lewis in the terms and conditions of her employment when it forced her to go on leave while allowing similarly situated Caucasian and Latino officers to remain at work in violation of Title VII.

47.

Defendant discriminated against Ms. Lewis in the terms and conditions of her employment when Ms. Lewis was terminated but similarly situated Caucasian and Latino officers were not.

48.

Ms. Lewis is entitled to an award of back pay and benefits, compensatory damages, attorney's fees, and all other appropriate damages, remedies, and other relief available under Title VII and all federal statutes providing remedies for violations of Title VII.

**COUNT II**
**Race Discrimination in Violation of 42 U.S.C. § 1981**
**Through 42 U.S.C. § 1983**
**(Against All Defendants)**

49.

Plaintiff incorporates by reference the preceding Paragraphs as if fully restated herein.

50.

Ms. Lewis is African American, a protected class, and was terminated by Defendants because of her race.

51.

Defendants discriminated against Ms. Lewis in the terms and conditions of her employment when they forced her to go on leave while allowing similarly situated Caucasian and Latino officers to remain at work in violation of 42 U.S.C. § 1981 and 1983.

52.

Defendants discriminated against Ms. Lewis in the terms and conditions of her employment when Ms. Lewis was terminated but similarly situated Caucasian and Latino officers were not.

53.

The employment relationship between Ms. Lewis and Defendants gives rise to a cause of action for race discrimination.

54.

Defendants' conduct in forcing Ms. Lewis on leave and terminating Ms. Lewis because her race constitutes unlawful race discrimination in violation of 42 U.S.C. § 1981.

55.

Pursuant to 42 U.S.C. § 1981 as effectuated by 42 U.S.C. § 1983, Ms. Lewis is entitled to declaratory relief, injunctive relief, compensatory damages and punitive damages, attorney's fees, and all other appropriate damages, remedies, and other relief against Defendants because Defendants discriminated against Ms. Lewis on the basis of race as part of a larger scheme, policy and practice and in violation of clearly established law.

56.

This violation of rights was proximately caused by Defendants, who were acting under color of state law, and local ordinances, regulations, customs or usages of the City of Union City in violation of 42 U.S.C. § 1983.

57.

Defendants also terminated eight other African American officers since Ms. Lewis began working for Union City.

58.

Defendants' unlawful conduct violated clearly established law.

59.

As a direct and proximate result of the Defendants' actions, Ms. Lewis has suffered damages including emotional distress, inconvenience, loss of income and benefits, humiliation, and other indignities.

60.

Defendant Odom, acting under color of law, used his authority over Ms. Lewis to carry out illegal race discrimination against Ms. Lewis.

61.

At all relevant times, Defendant Odom was Police Chief of Union City and used his position to implement and carry out a custom, policy and procedure of discrimination on the basis of race.

62.

Defendant Odom undertook unlawful conduct intentionally and maliciously with respect to Ms. Lewis and her federally protected rights, entitling Ms. Lewis to recover punitive damages against him.

63.

Additionally and in the alternative, Defendant Odom undertook his unlawful conduct recklessly with respect to Ms. Lewis and her federally protected rights, entitling Ms. Lewis to recover punitive damages against him.

64.

Ms. Lewis was damaged by Defendants' actions in an amount to be proven at trial.

## COUNT III
## Gender Discrimination in Violation of
## Title VII of The Civil Rights Act of 1964, as Amended
### (Against Defendant Union City)

65.

Plaintiff incorporates by reference the preceding Paragraphs as if fully restated herein.

66.

Plaintiff is an "employee" as defined by Title VII, 42 U.S.C. § 2000e *et seq.*

67.

Defendant Union City is an "employer" as defined by Title VII, 42 U.S.C. § 2000e *et seq.*

68.

Chief Odom,  in his official capacity (Union City Chief of Police) is an "employer" as defined by Title VII, 42 U.S.C. § 2000e *et seq.*

69.

Defendants discriminated against Ms. Lewis in the terms and conditions of her employment when they forced her to go on leave while allowing similarly situated male officers to remain at work in violation of Title VII.

70.

Defendants discriminated against Ms. Lewis in the terms and conditions of her employment when Ms. Lewis was terminated but similarly situated male officers were not.

71.

Defendants discriminated against Ms. Lewis by terminating her because of her sex.

72.

Defendants' sex discrimination is in violation of Title VII, entitling Ms. Lewis to all appropriate relief provided under the statute.

73.

Defendants' actions were willful, deliberate, and intended to cause Ms. Lewis harm and/or were committed with reckless disregard of the harm caused to Ms. Lewis, and were in derogation of her federally protected rights.

74.

As a result of Defendants' conduct, Ms. Lewis has suffered lost wages and benefits and has suffered mental and emotional distress.

75.

Ms. Lewis was damaged by Defendants' actions in an amount to be proven at trial.

76.

Ms. Lewis is entitled to an award of back pay and benefits, compensatory damages, attorney's fees, and all other appropriate damages, remedies, and other relief available under Title VII and all federal statutes providing remedies for violations of Title VII for Defendants' violation of Title VII.

## COUNT IV
### Gender Discrimination in Violation of the Equal Protection Clause of the United States Constitution Through 42 U.S.C. § 1983
**(Against All Defendants)**

77.

Plaintiff incorporates by reference the preceding Paragraphs as if fully restated herein

78.

The Equal Protection Clause of the Fourteenth Amendment to the United States Constitution entitles Ms. Lewis to equal protection under the laws based upon gender.

79.

Ms. Lewis is a member of a protected class, and she was forced on leave and then terminated by Defendants because of her gender.

80.

The employment relationship between Ms. Lewis and Defendants gives rise to a cause of action for gender discrimination.

81.

Defendants Union City and Chief Odom in his individual capacity, are governmental entities subject to the Fourteenth Amendment as applied through 42 U.S.C. §1983, and each is a "person" as defined by relevant case law interpreting 42 U.S.C. §1983.

82.

Defendants implemented policies and customs that discriminated on the basis of gender, and that therefore violate Ms. Lewis's rights under the Fourteenth Amendment to the U.S. Constitution, enforced via 42 U.S.C. §1983.

83.

Defendants violated Ms. Lewis's rights to equal protection by, among other things, forcing Ms. Lewis to take leave, while allowing similarly situated male co-

workers to continue working, and terminating Ms. Lewis while retaining similarly situated male co-workers.

84.

Defendants undertook all of the unlawful conduct giving rise to the Ms. Lewis's claims while acting under color of State and local law.

85.

Defendants took these actions with knowledge that they were in clear violation of constitutional and federal statutory law.

86.

At all relevant times, Defendant Odom was Union City's Chief of Police and used his position to implement and carry out a custom, policy and procedure of discrimination on the basis of gender.

87.

Defendant Odom undertook his unlawful conduct intentionally and maliciously with respect to Ms. Lewis and her federally protected rights, entitling Ms. Lewis to recover punitive damages against Defendant Odom.

88.

Additionally and in the alternative, Defendant Odom undertook unlawful conduct recklessly with respect to Ms. Lewis and her federally protected rights, entitling Ms. Lewis to recover punitive damages against him.

89.

Defendant Odom's unlawful conduct violated the above-pled clearly established law.

90.

As a direct and proximate result of the Defendants' actions, Ms. Lewis has suffered damages including emotional distress, inconvenience, loss of income and benefits, humiliation, and other indignities.

91.

Defendants' gender discrimination against Ms. Lewis violates the Equal Protection Clause of the Fourteenth Amendment, thus entitling Plaintiff to all appropriate relief provided under 42 U.S.C. §1983.

92.

Ms. Lewis was damaged by Defendants' actions in an amount to be proven at trial.

**COUNT V**
**Violation of the ADAAA – Disability Discrimination/Failure to Accommodate**
**(Against Defendant Union City)**

93.

Plaintiff incorporates by reference the preceding Paragraphs as if fully restated herein.

94.

Ms. Lewis is and, at all times relevant hereto, was a qualified individual with a disability as that term is defined under 42 U.S.C. § 12102(1).

95.

Ms. Lewis also had a record of impairment during her employment with Defendant

96.

Ms. Lewis is a person with a disability inasmuch as she has a physical impairment causing substantial limitation in one or more major life activities.

97.

At all times relevant hereto, Ms. Lewis was able to perform the essential functions of her job with or without an accommodation.

98.

Union City is an "employer" as defined by the ADAAA.

99.

In January 2009, Union City and Chief Odom became aware of Ms. Lewis's disability when she suffered a heart attack and informed the Defendant of her heart condition.

100.

When Defendant required that Ms. Lewis receive a shock from a Taser, Ms. Lewis requested a reasonable accommodation that would have allowed her to continue to perform the essential functions of her job.

101.

Defendant did not grant the accommodation and forced Ms. Lewis to take leave.

102.

In July 2010, Defendant terminated Ms. Lewis on the pretextual basis that she had taken unapproved leave.

103.

Defendant terminated Ms. Lewis because of her disability and her need for accommodation.

104.

Defendant's actions violate the ADAAA, which prohibits intentional discrimination on the basis of disability.

105.

As a direct and proximate result of the Defendant's intentional discrimination, Ms. Lewis has suffered out of pocket losses and Defendant has deprived her of a job, as well as income in the form of wages, health insurance, prospective retirement benefits, social security, and other benefits due her, all in an amount to be established at trial.

106.

In addition, the Defendant's actions have caused, continue to cause, and will cause Ms. Lewis to suffer damages for emotional distress, mental anguish, loss of enjoyment of life, and other non-pecuniary losses all in an amount to be established at trial.

107.

Ms. Lewis is also entitled to be reinstated to employment by Union City and, if reinstatement is not feasible, Ms. Lewis is entitled to an award of damages for future lost wages and benefits of employment.

## COUNT VI
## <u>Violation of the ADAAA – Regarded as Disabled</u>
## (Against Defendant Union City)

### 108.

Plaintiff incorporates by reference the preceding Paragraphs as if fully restated herein.

### 109.

Ms. Lewis is and, at all times relevant hereto, was a qualified individual with a disability as that term is defined under 42 U.S.C. § 12102(1)(C) because Defendant regarded him as a person with an impairment as defined by the ADAAA.

### 110.

Ms. Lewis is a person with a disability inasmuch as she has a physical impairment causing substantial limitation in one or more major life activities.

### 111.

Defendant also regarded Ms. Lewis as disabled as defined by the ADAAA.

### 112.

At all times relevant hereto, Ms. Lewis was able to perform the essential functions of her job with or without an accommodation.

113.

Union City is an "employer" as defined by the ADAAA.

114.

In January 2009, Defendant became aware of Ms. Lewis's disability when she suffered a heart attack and informed them of her heart condition and Graves disease.

115.

Despite her qualifications for her position, Defendant intentionally terminated Ms. Lewis because it regarded her as impaired in favor of a non-impaired, non-disabled person.

116.

Defendant told Ms. Lewis that her termination was for taking leave without approval.

117.

Defendant's actions violated the ADAAA, which prohibits intentional discrimination on the basis of disability.

118.

As a direct and proximate result of Defendant's intentional discrimination, Ms. Lewis has suffered out of pocket losses and Defendant has deprived Ms. Lewis

of a job, as well as income in the form of wages, health insurance, prospective

retirement benefits, social security, and other benefits due her, all in an amount to

be established at trial.

119.

In addition, Defendant's actions have caused, continue to cause, and will

cause Ms. Lewis to suffer damages for emotional distress, mental anguish, loss of

enjoyment of life, and other non-pecuniary losses all in an amount to be

established at trial.

120.

Ms. Lewis is also entitled to be reinstated to employment by the City and, if

reinstatement is not feasible, Ms. Lewis is entitled to an award of damages for

future lost wages and benefits of employment.

**PRAYER FOR RELIEF**

WHEREFORE, Plaintiff demands a TRIAL BY JURY and requests the

following relief:

a. a declaratory judgment that Defendants violated Title VII of the Civil

Rights Act of 1964, as amended 42 U.S.C. § 2000e *et seq*., 42 U.S.C. § 1981

through 42 U.S.C. § 1983; the Equal Protection Clause of the United States

Constitution through 42 U.S.C. § 1983, and the Americans with Disabilities Act, as amended by the ADA Amendments Act of 2008, 42 U.S.C. § 12101 *et seq.*;

   b.    a permanent injunction, prohibiting Defendants from engaging in unlawful employment practices in violation of Title VII, the ADAAA, or 42 U.S.C. § 1983;

   c.    full back pay from the date of Plaintiff's termination, taking into account all raises to which Plaintiff would have been entitled but for her unlawful termination, and all fringe and pension benefits of employment, with prejudgment interest thereon;

   d.    reinstatement to Plaintiff's former position with Defendants at the same pay grade, or in the alternative, front pay to compensate Plaintiff for lost future wages, benefits and pension;

   e.    compensatory damages in an amount to be determined by the enlightened conscience of the jury, for Plaintiff's emotional distress, suffering, inconvenience, mental anguish, loss of enjoyment of life and special damages;

   f.    punitive damages against Defendant Odom in his individual capacity;

   g.    attorneys' fees and costs; and

   h.    all other and further relief as this Court deems just and proper.

Respectfully submitted this 19th day of November, 2012.


By:   Cheryl B. Legare
      Georgia Bar No. 038553
      cblegare@buckleyklein.com
      Paul Chichester IV
      Georgia Bar No. 189958
      pchichester@buckleyklein.com

BUCKLEY & KLEIN, LLP
Promenade II, Suite 900
1230 Peachtree Street NE
Atlanta, GA  30309
Telephone:  404-781-1100
Facsimile:  404-781-1101

Attorneys for Plaintiff